IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


KIMBERLY M. CANNON,
      Petitioner,

vs.                           Case No.:  3:14cv348/MCR/EMT

JULIE L. JONES,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

      This cause is before the court on Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 1).  Respondent filed an answer and relevant portions of the state court record (doc. 21).  Petitioner filed a reply (doc. 24).

      The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

## I.      BACKGROUND AND PROCEDURAL HISTORY

      The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 21).[1]  Petitioner was charged in the Circuit Court in and for Escambia County, Florida, Case No. 2002-CF-404, with one count of burglary of an unoccupied dwelling (Count 1)

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 21).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

and one count of grand theft (Count 2) (Ex. A3). She was subsequently charged in the Escambia County Circuit Court in three additional cases. In Case No. 2004-CF-520, she was charged with one count of exploitation of the elderly, one count of organized fraud, eight counts of grand theft, and one count of felony petit theft (Ex. C). In Case No. 2004-CF-528, she was charged with three counts of illegal use of personal identification, one count of grand theft auto, and two counts of forgery (Ex. D). And in Case No. 2004-CF-707, she was charged with three counts of making a false statement with intent to defraud a financial institution (Ex. B3).

Disposing of all counts in all cases, on November 18, 2004, Petitioner signed a negotiated plea agreement, pursuant to which she agreed to plead nolo contendere to all counts as charged in Case Nos. 2002-CF-404, 2004-CF-520, and 2004-CF-707 (Ex. E). In Case No. 2004-CF-528, Petitioner agreed to enter a nolo contendere plea to two counts of illegal use of personal identification and two counts of forgery, and the State agreed to nolle pros the remaining two counts (*id.*). Pursuant to the plea agreement, Petitioner would be adjudicated guilty and serve "5 yrs. State Prison followed by 5 yrs. probation" (*id.*).

During proceedings held November 19, 2004, the court accepted Petitioner's pleas, adjudicated her guilty on all counts to which she pled, and sentenced her to concurrent terms of five years of incarceration, to be followed by five years of probation, with pre-sentence jail credit (Exs. F, G, H). On February 3, 2005, the court granted Petitioner's request for an additional five days of sentence credit, and the judgment was modified accordingly (Exs. G, I).

On March 8, 2007, Petitioner filed a motion to correct illegal sentence, pursuant to Rule 3.800(a) of the Florida Rules of Criminal Procedure (Ex. J1). In an order rendered July 9, 2007, the state circuit court granted the motion and directed the clerk of court to correct the judgment and sentence to reflect the following:

> Defendant's third-degree felonies (count 2 in case no. 02-0404B, counts 1 through 11 in case no. 04-0520B, counts 2, 3, 5, and 6 in case no. 04-0528B) should be corrected to reflect a sentence of five years of incarceration on each count, to be served concurrently. The rest of Defendant's sentences shall remain the same.

(Ex. J2).

On May 9, 2008, a probation violator warrant issued (Ex. M). Petitioner was charged with nine violations (Ex. P). During proceedings held October 22, 2010, Petitioner pleaded no contest

to Counts I through V of the Addendum to Violation Report (three allegations of new law violations charged in the Circuit Court in and for Leon County, Florida, Case No. 2008-CF-1677, and two allegations of possessing or sending contraband from a county detention facility for an attempted escape, or a solicitation to aid in escape) (Exs. P, Q).  The State nolle prossed the remaining four alleged violations (*see* Ex. Q).  The court adjudicated Petitioner guilty of violating her probation and sentenced her in Case No. 2002-CF-404, to fifteen years in prison, with credit for time served (*see* Exs. Q, S, T).  The court sentenced her in Case No. 2004-CF-707, to three concurrent terms of ten years in prison, to run consecutively to the sentence in Case No. 2002-CF-404 and consecutively to any other sentence she was then serving, with credit for time served (*see* Exs. Q, S).[2]  The judgment was rendered October 22, 2010 (*see* Ex. S).

On February 2, 2011, Petitioner filed a petition for writ of habeas corpus in the Florida First District Court of Appeal ("First DCA"), Case No. 1D11-0678, seeking a belated appeal (Ex. U1).  The  First DCA granted the petition and directed the circuit court to treat the petition as a notice of appeal (Ex. U2).  Cannon v. State, 65 So. 3d 83 (Fla. 1st DCA 2011) (Mem).  Petitioner's counsel filed a brief in Case No. 1D11-4042, pursuant to Anders v. California, 386 U.S. 738 (1967), asserting that the appeal was "wholly frivolous" (Ex. V).  Petitioner filed a pro se initial brief (Ex. X).  The First DCA affirmed the VOP judgment per curiam without written opinion on March 21, 2012, with the mandate issuing April 17, 2012 (Ex. Y).  Cannon v. State, 83 So. 3d 712 (Fla. 1st DCA 2012) (Table).  Petitioner did not seek further review.

On September 7, 2011, while the appeal was pending, Petitioner filed a Rule 3.800(a) motion to correct illegal sentence (Ex. AA1).  The state circuit court dismissed the motion for lack of jurisdiction on September 20, 2011 (Ex. AA2).

On January 16, 2012, Petitioner filed a letter in the Supreme Court of Florida (Ex. BB1).  The state supreme court treated the filing as a petition for writ of habeas corpus and assigned Case No. SC212-168 (Exs. BB2).  The court issued an order directing Petitioner to show cause why the

---

[2] At the time of sentencing on the VOP, Petitioner was serving three concurrent five-year sentences for the new law violations, imposed on May 15, 2009 in Leon County Case No. 2008-CF-1677 (*see* Ex. R3).  She was also serving a fifteen-year sentence for manslaughter, imposed on August 17, 2010, by the Circuit Court in and for Santa Rosa County, Florida, Case No. 2008-CF-854 (*see* Ex. JJ).

petition should not be dismissed as unauthorized (Ex. BB3).  Petitioner filed a response (Ex. BB4).
On April 11, 2012, the state supreme court dismissed the habeas petition (Ex. BB5).  Cannon v.
Tucker, 88 So. 3d 148 (Fla. 2012) (Table).

On April 13, 2012, Petitioner filed a motion in the state circuit court seeking jail credit (Ex.
CC).  The court denied the motion on August 2, 2012 (*see* Ex. A1 at 13, Ex. B1 at 9).

Also on April 13, 2012, Petitioner filed a motion for postconviction relief, pursuant to Rule
3.850 of the Florida Rules of Criminal Procedure (Ex. DD1).  Petitioner subsequently filed a motion
for voluntary dismissal (Ex. DD2), which the court granted and dismissed the Rule 3.850 motion
without prejudice in an order rendered August 2, 2012 (Ex. DD3).

While the Rule 3.850 motion was pending, Petitioner filed a Rule 3.800(a) motion (Ex. EE1).
The state circuit court denied the motion in an order rendered August 2, 2012 (Ex. EE2).  Petitioner
appealed the decision to the First DCA, Case No. 1D12-3988 (Ex. EE3).  The First DCA affirmed
the decision per curiam without written opinion on December 10, 2012, with the mandate issuing
January 7, 2013 (*id.*).  Cannon v. State, 103 So. 3d 146 (Fla. 1st DCA 2012) (Table).

Petitioner filed another Rule 3.800(a) motion on March 18, 2013 (Ex. FF1).  The state circuit
court denied the motion in an order rendered April 19, 2013 (Ex. FF2).

Petitioner filed another Rule 3.850 motion on June 16, 2013 (Ex. GG1).  In an order rendered
November 6, 2013, the state circuit court struck the motion as facially insufficient, without prejudice
to Petitioner's filing an amended motion within sixty days (Ex. GG2).  Petitioner filed an amended
motion on December 6, 2013 (Ex. GG3).  The state circuit court summarily denied it on February
24, 2014 (Ex. GG4).  Petitioner appealed the decision to the First DCA, Case No. 1D14-1495 (Exs.
GG5, GG6).  The First DCA affirmed the decision per curiam without written opinion on May 27,
2014, with the mandate issuing July 23, 2014 (Ex. GG8).  Cannon v. State, 114 So. 3d 184 (Fla. 1st
DCA 2014) (Table).

Petitioner filed the instant federal habeas action on July 21, 2014 (doc. 1).  Respondent
concedes that the petition was timely filed (doc. 21 at 12).

II.      STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for
a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court"

upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19.  In relevant part, section 2254(d) now provides:

> (d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing

---

[3] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

> legal principle from this Court's decisions but unreasonably applies that principle to
> the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.  Moreover, where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law.  *See* Henderson v. Campbell, 353 F.3d 880, 890 n. 15 (11th Cir. 2003).

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable

application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it.  Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'" Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, 562 U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  See Gill, supra at 1291 (citing Harrington).  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  See Harrington, 562 U.S. at 102; see also Gill, supra, at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see e.g., Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. See Gill, 633 F.3d at 1292. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. Id.

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. See Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

III.   EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, see 28 U.S.C. § 2254(b)(1), thereby giving

the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has provided lower courts with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982).  In Anderson, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  Anderson, 459 U.S. at 7.  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim.  Id., 459 U.S. at 7 and n.3.  Furthermore, the Court clarified that such a citation was obviously

insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  *Id.*

Years later, the Supreme Court readdressed the "fair presentation" requirement in <u>Duncan v. Henry</u>, 513 U.S. 364.  The <u>Duncan</u> Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[4]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  <u>Duncan</u>, 513 U.S. at 365–66.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  <u>Baldwin v. Reese</u>, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).  In <u>Baldwin</u>, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  *Id.*, 541 U.S. at 32.  This language, while not part of the Court's holding, provides helpful instruction.  With regard to this language, the Eleventh Circuit explained in <u>McNair v. Campbell</u>, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'"  <u>McNair</u> [<u>v. Campbell</u>], 315 F. Supp. 2d at 1184 (quoting <u>Vasquez v. Hillery</u>, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)).  This is consistent with settled law established by the Supreme Court. . . .  We

---

[4] The petitioner in <u>Duncan</u> raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.  513 U.S. at 366.

therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[5]

The Eleventh Circuit, prior to <u>Duncan</u>, had broadly interpreted the "fair presentation" requirement.  After <u>Duncan</u>, however, the Eleventh Circuit has taken a more narrow approach.  For example, in <u>Zeigler v. Crosby</u>, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution.  345 F.3d 1300, 1307 (11th Cir. 2003).  The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words:  "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution.  <u>Id.</u> at 1308 n.5.  The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases.  The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us."  <u>Id.</u>

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review.  <u>See</u> <u>O'Sullivan</u>, 526 U.S. at 839–40, 848; <u>Bailey v. Nagle</u>, 172 F.3d 1299, 1302–03 (11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  <u>See</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); <u>Caniff v. Moore</u>, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims

_____

[5] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law."  <u>McNair v. Campbell</u>, 416 F.3d 1291, 1303 (11th Cir. 2005).  The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments.  <u>Id.</u>

that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Bailey, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question. *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner.  Ford v. Georgia, 498 U.S. 411, 424–25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision.  Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001).  First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[6]  Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law.  Third, the state procedural rule must be adequate. *Id.*  The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Id.*

---

[6] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994).

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice.  Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)).  To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  Schlup, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

Id.  Although a habeas petitioner asserting a convincing claim of actual innocence need not prove diligence to overcome a procedural bar, timing is a factor relevant in evaluating the reliability of a petitioner's proof of innocence.  See McQuiggin v. Perkins, — U.S. —, 133 S. Ct. 1924, 1935, 185 L. Ed. 2d 1019 (2013).  As the Court stated in Schlup, "[a] court may consider how the timing of the submission and the likely credibility of [a petitioner's] affiants bear on the probable reliability of . . . evidence [of actual innocence]."  513 U.S. at 332; see also House, 547 U.S. at 537.

Within this framework, the court will review Petitioner's claims.

IV.   PETITIONER'S CLAIMS

A.    Ground One:  "Sentence violates the Constitution or laws of the U.S. where it exceeds the statutory maximum, has a vague commencement date and cannot be served seriatim."

Petitioner contends that the part of her VOP sentence directing that it run consecutively to any sentence she was currently serving, without more specifically identifying which sentence to which the court was referring, is vague, and thus violates the requirement that a sentence be definite

and certain (doc. 1 at 5–6).  She also contends that ordering the VOP sentence to run consecutively constitutes an "unconstitutional interruption" in the original sentences imposed on November 19, 2004, because she cannot serve it *seriatim*, and violates double jeopardy because it exceeds the statutory maximum (*id.*).  Petitioner alleges her original sentences began to run on November 19, 2004, but due to the "interruption" of having to serve sentences in other cases before she can begin serving the VOP sentence, her original sentences will not expire until 2032 (in Case No. 2002-CF-404) and 2039 (in Case No. 2004-CF-707), which exceeds the 15-year statutory maximum for each second degree felony.  Petitioner asserts she raised this issue in her Rule 3.850 motion, which the state circuit court denied on February 24, 2014, and she raised in on appeal to the First DCA, Case No. 1D14-1495 (*id.* at 7).

Respondent asserts that with the exception of the prefatory phrase "Sentence violates the Constitution or laws of the U.S." in the statement of her claim, the claim presented in Ground One (that the VOP sentence was vague, exceeded the statutory maximum, violated double jeopardy, and constituted an "unconstitutional interruption") is the same claim she presented in Ground 1 of her amended Rule 3.850 motion (*see* doc. 21 at 30–319).  Respondent argues that despite Petitioner's characterizing her sentence as including an "unconstitutional interruption" causing it to exceed the statutory maximum and violating double jeopardy, she did not fairly present a federal claim to the state courts, and instead presented issues of purely state law (*id.* at 30–34).  Respondent alternatively argues that even if Petitioner could be deemed to have fairly presented her claim as one of federal constitutional dimension, she still is not entitled to federal habeas relief, because the state courts' rejection of her claim was not contrary to or an unreasonable application of clearly established federal law (*id.* at 34–35).

In Ground 1 of Petitioner's amended Rule 3.850 motion, she argued that her VOP sentence was illegal because it exceeded the statutory maximum and had a vague commencement date (Ex. GG3 at 53–57).  She asserted that her original sentence, imposed November 19, 2004, was a "split" sentence of five years in prison followed by five years of probation.  She asserted she completed the incarcerative portion of her sentence, and did not violate her probation until after she was arrested on a homicide charge in Santa Rosa County based upon a killing that occurred in 1995.  Petitioner asserted that the fifteen-year statutory maximums for the four second degree felonies (which were

the felonies underlying the VOP conviction) began to run on November 19, 2004, the date they were originally imposed; thus, the sentencing court's ordering the VOP sentence to run consecutively to the sentence on the homicide charge extended or "tolled" the VOP sentence beyond the statutory maximum and constituted an "unconstitutional interruption" of her sentence.  Petitioner conceded that when imposing the VOP sentence, the court was authorized to impose any sentence that may have originally been imposed for the crimes; however, she argued that the court was not authorized to direct that the VOP sentence begin on an "arbitrary, uncertain date."  She contended that an "interrupted" sentence was impermissible under Florida law.  In her supporting memorandum, Petitioner cited thirteen Florida state cases (*id.* at 85–86).

The state circuit court adjudicated the claim as follows:

**GROUND 1**

Defendant claims the sentencing court erred by imposing an illegal sentence that is not seriatim, exceeds the statutory maximum, and has a vague commencement date.  She asserts the court was without jurisdiction to impose a sentence that will begin at some arbitrary date in the future and exceeds the statutory maximum.  She alleges on November 19, 2004, she was sentenced to a 10 year probationary split sentence, whereby she completed her five years incarceration, then violated her probation, and was sentenced to 25 years to be served consecutively to a 15 year sentence on an unrelated charge.

In its August 2, 2012, Order Denying Defendant's Motion to Correct Illegal Sentence, the Court addressed Defendant's claim she is serving an interrupted sentence.[FN 1]  (Exhibit A.)

[FN 1:  Defendant asserts the Court erred in its order.]

Pursuant to the judgment and sentence of November 19, 2004, Defendant was convicted of a number of charges, including one count of burglary of an unoccupied dwelling in case number 02-404-CF, and in case number 04-707-CF, to three counts of false statement with intent to defraud a financial institution.  These offenses were second degree felonies for which she was sentenced to 10 year split sentences to be served concurrently.  She violated her probation as to both cases and pursuant to the judgment and sentence of October 22, 2010, was sentenced to 15 years prison as to the burglary and to 10 years on each of the three false statement counts, each to run concurrent to one another and consecutive to the 15 year burglary sentence, with credit for time previously served.  These sentences were also ordered to run consecutive to any other sentence she was currently serving.  As explained by the

> August 2, 2012, order, Defendant is not serving an interrupted sentence.  Nor do her
> sentences exceed the statutory maximum.  The remainder of her claim is without
> merit.

(Ex. GG4 at 104–05).  Petitioner raised these issues in her initial brief on appeal to the First DCA,

citing only Florida state cases in her argument (Ex. GG6 at 12–17).  The appellate court affirmed

the lower court's decision without written opinion (Ex. GG8).

Because both Petitioner and the state court referenced the court's order of August 2, 2012,

in which the court denied the same sentencing claims presented by Petitioner in a motion to correct

illegal sentence,[7] this court sets forth that decision here:

> The Defendant contends that she is serving an "illegal split sentence" and requests
> to be resentenced.  The Defendant's motion is entirely without merit.
>
> The Court recognizes that "[w]hether consecutive or concurrent the prisoner
> must be allowed to serve his sentence seriatim. . . ."  Rozmestor v. State, 381 So. 2d
> 324, 326 (Fla. 5th DCA 1980).  In other words, "a prison sentence imposed partly
> concurrent with and partly consecutive to another prison sentence is illegal since a
> prisoner has the right to serve a sentence at one stretch, rather than in bits and
> pieces."  William H. Burgess, III, Florida Sentencing, § I:54, "Sentencing
> alternatives—Concurrent and consecutive sentencing" (2011–2012 ed.).
>
> Quite simply, the Defendant is not serving an "interrupted sentence."
> Attachments 1 and 2.  Her sentences in these cases are to be served fully
> consecutively to any sentence she was serving at the time of sentencing on the
> violation of probation.  After serving her unrelated sentence, the Defendant will
> serve her sentence in case number 02-404.  Afterward, the Defendant will serve her
> concurrent sentences in case number 04-707.  The Defendant will be serving all of
> her sentences in one stretch.
>
> The fact that the Defendant was previously sentenced to valid probationary
> split sentences does not make her current sentences "illegal spilt sentences."  In fact,
> the Defendant's current sentences are not "split sentences" at all; rather, the
> sentences are simply terms of incarceration in the state prison with appropriate credit
> for time previously served.
>
> As the Florida Supreme Court has explained:

---

[7] In her Rule 3.800(a) motion, Petitioner argued that her VOP sentence was illegal because an interrupted sentence is not allowed under Florida statutes (see Ex. EE1).  She argued and cited only Florida state cases in her motion (see id.).

Thus, we conclude that a judge has five basic sentencing alternatives in Florida: (1) a period of confinement; (2) a "true split sentence" consisting of a total period of confinement with a portion of the confinement period suspended and the defendant placed on probation for that suspended portion; (3) a "probationary split sentence" consisting of a period of confinement, none of which is suspended, followed by a period of probation; (4) a <u>Villery</u> sentence, consisting of period of probation preceded by a period of confinement imposed as a special condition; and (5) straight probation.

**If the defendant violates his probation in alternatives (3), (4) and (5), section 948.06(1) and [<u>North Carolina v. ]Pearce</u>[, 395 U.S. 711, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969)] permit the sentencing judge to impose any sentence he or she originally might have imposed, with credit for time served** and subject to the guidelines recommendation.

<u>Poore v. State</u>, 531 So. 2d 161, 164 (Fla. 1988) (emphasis added); <u>see also</u>, <u>Hernandez v. State</u>, 740 So. 2d 1245 (Fla. 3d DCA 1999).

If the Defendant's sentences in these cases were "interrupted" it was only due to the *unrelated* sentence imposed at a *different time* by a sister Circuit Court as a result of the Defendant's criminal activity while on probation. See <u>Porter v. State</u>, 585. So. 2d 399 (Fla. 1st DCA 1991); <u>State v. Matthews</u>, 891 So. 2d 479 (Fla. 2004).

Pursuant to section 921.16(1), Florida Statutes:

Sentences of imprisonment for offenses not charged in the same indictment, information, or affidavit shall be served consecutively unless the court directs that two or more of the sentences be served concurrently.

As the Fifth District Court of Appeal has explained:

Next, Lister argues that the lawyer appointed to represent him after withdrawal of his pleas was ineffective for "failing to insure" that Lister's probation violation hearing was held after any trial or plea on his new law violations to "protect" [him] from possible consecutive sentencing." This claim was also properly denied as facially invalid. The trial court's discretion to impose consecutive sentences was in no way dependant upon the order in which the cases were resolved.

<u>Lister v. State</u>, 925 So. 2d 400, 402 (Fla. 5th DCA 2006) (emphasis added).

(Ex. EE2).  Petitioner appealed the decision to the First DCA, and the appellate court affirmed the lower court's decision without written opinion (Ex. EE3).

Upon review of Petitioner's Rule 3.800(a) motion, it is abundantly clear that Petitioner did not present a federal claim and instead argued only that her VOP sentence violated Florida law (Ex. EE1).  In her amended Rule 3.850 motion, she argued that the sentencing court's running the VOP sentence consecutive to any sentence she was then serving was an "unconstitutional interruption" and violated the prohibition against double jeopardy, but this could be interpreted as asserting a claim under the Florida Constitution,[8] especially since Petitioner argued only that the consecutive sentence violated Florida law (*see* Ex. GG3 at 54–56, 85).  *See* Zeigler, 345 F.3d at 1308 n.5 (holding that petitioner failed to fairly present federal due process claim involving juror misconduct; section of habeas petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution).  Therefore, the undersigned agrees with Respondent that Petitioner did not alert the state courts that she was raising a claim under the federal Constitution and thus did not fairly present a federal claim to the state courts with respect to any of the arguments she presents in Ground One of her § 2254 petition (i.e., the VOP sentence was vague, exceeded the statutory maximum, violated double jeopardy, and constituted an "unconstitutional interruption").[9]  Therefore, any federal claims asserted in Ground One are unexhausted and procedurally barred.

Petitioner argues in her reply that the absence of federal cases from her state court pleadings was due to the "limitations of Petitioner's research avenues and abilities" (doc. 24 at 2).  However, the court notes that Petitioner cited and argued federal law in other claims of her amended Rule 3.850 motion, for example, she cited the Sixth Amendment, Strickland v. Washington, 466 U.S. 668 (1984), and Giglio v. United States, 92 S. Ct. 763 (1972) (*see* Ex. GG3 at 59–61, 63, 67–68, 70,

---

[8] The Florida Constitution, like the Fifth Amendment to the United States Constitution, includes a double jeopardy clause.  *See* Art. I, § 9, Fla. Const. ("[n]o person shall be . . . twice put in jeopardy for the same offense.").

[9] The state court record shows that Petitioner also made the "interrupted sentence" argument in her pro se brief on appeal of the VOP judgment (Ex. X at 5–6).  However, she argued a violation of only state law and cited only Florida state cases in her brief (*see id.*).

72–74, 77, 86–88).  Further, Petitioner could simply have labeled her claim "federal," which does not require any legal research or legal knowledge.  Therefore, Petitioner failed to show cause for her failure to exhaust Ground One.

Additionally, even if Petitioner's citation to <u>Poore v. State</u>, 531 So. 2d 161 (Fla. 1988) was sufficient to alert the state court to a federal double jeopardy claim, Petitioner failed to demonstrate that the state court's adjudication of her double jeopardy claim was contrary to or an unreasonable application of clearly established federal law. It is well established within Supreme Court jurisprudence that the Double Jeopardy Clause bars multiple punishment, as well as punishment which exceeds that permitted by law.  *See* <u>Missouri v. Hunter</u>, 459 U.S. 359, 366, 103 S. Ct. 673, 74 L. Ed. 2d 535 (1983); <u>North Carolina v. Pearce</u>, 395 U.S. 711, 89 S. Ct. 2072, 23 L. Ed.2d 656 (1969).  Moreover, the Double Jeopardy Clause respects a defendant's "legitimate expectations" as to the length of her sentence.  <u>United States v. DeFrancesco</u>, 449 U.S. 117, 101 S. Ct. 426, 66 L. Ed. 2d 328 (1980).  A defendant who has been placed on probation, however, has no legitimate expectation beyond that her ultimate sentence will not exceed that permitted by law if she is resentenced upon later revocation of the probation.  *Id*., 449 U.S. at 437;  *see also* <u>United States v. Jones</u>, 722 F.2d 632, 638 (11th Cir. 1983).  It must be recognized, as discussed by the former Fifth Circuit, that:

> [i]n <u>Roberts v. United States</u>, 320 U.S. 264, 64 S. Ct. 113, 88 L. Ed. 41 (1943), the United States Supreme Court, interpreting the federal probation statute then in effect, held that a probationer's resentencing for violation of probation could not exceed the terms of the sentence originally imposed.  In so holding, it limited its decision to construction of the federal statute and specifically declined to pass upon the constitutionality of resentencing a probation violator to a greater term than originally imposed.  In the case before us, however, we are dealing with a state-created system of criminal procedure, one which presumably reflects the policies and directives of the state citizens as expressed through their elected representatives.  Questions of interpretation of state statutes are within the special authority of the state supreme court, and our review is limited to the question of whether the state procedure passes constitutional muster.

<u>Williams v. Wainwright</u>, 650 F.2d 58, 61 (5th Cir. Jul. 6, 1981).[10]  In <u>Williams</u>, the court found no double jeopardy violation in the Florida statutory scheme which allows the sentencing court upon revoking a defendant's probation to impose any sentence which it might originally have imposed, even if the length of the final sentence is an increase over that originally imposed.  650 F.2d at 61–62; *see also* <u>Hudgins v. Wainwright</u>, 530 F. Supp. 944 (S.D. Fla. 1981).

Here, the state court determined that Petitioner's sentence imposed upon her for violating her probation did not exceed the statutory maximum set forth in Florida statutes (*see* Ex. EE2, Ex. GG4 at 105).  Additionally, the state court determined that under Florida law, sentences of imprisonment for offenses not charged in the same indictment, information, or affidavit shall be served consecutively unless the court directs that two or more of the sentences be served concurrently (*see* Ex. EE2).  *See* Fla. Stat. § 921.16.  This court must abide by the state court's interpretation of state law.  *See* <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005); <u>Mullaney v. Wilbur</u>, 421 U.S. 684, 691, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975).  According deference to the state court's interpretation of state law, the state courts' adjudication of Petitioner's double jeopardy claim was not contrary to or an unreasonable application of clearly established federal law.  Petitioner did not receive multiple punishments for the same offense,[11] and her VOP sentence did not exceed the statutory maximum.

As a final matter, the court notes that in Petitioner's memorandum in support of her § 2254 petition, she alleges that her trial counsel and appellate counsel were ineffective for failing to object to the VOP sentence on the ground that it exceeded the statutory maximum (doc. 1 at 26).  Respondent did not address this allegation.  Further, it does not appear that Petitioner presented this claim in her amended Rule 3.850 motion, which is the appropriate vehicle for doing so in Florida.  Notwithstanding the failure to exhaust, Petitioner is not entitled to federal habeas relief on this claim.

---

[10] Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit.  <u>Bonner v. Pritchard</u>, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

[11] To the extent Petitioner argues a double jeopardy violation based upon her being prosecuted and sentenced for escape, battery of a law enforcement officer, and resisting an officer with violence in Santa Rosa County Case No. 2008-CF-1677, and then being convicted of violating the terms of her probation by committing those offenses, the Eleventh Circuit has squarely rejected that argument.  *See* <u>United States v. Woods</u>, 127 F.3d 990, 992 (11th Cir. 1997).

In Strickland v. Washington, 466 U.S. 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set out a two-part inquiry for ineffective assistance claims. Petitioner must show that (1) her counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced the petitioner. *Id.*, 466 U .S. at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness. Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Darden v. Wainwright, 477 U.S. 168, 184, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986) (quoting Strickland, 466 U.S. at 668, 694).

Although an ineffective assistance of counsel claim is a federal constitutional claim which the court considers in light of the clearly established law of Strickland, when "the validity of the claim that [counsel] failed to assert is clearly a question of state law, . . . we must defer to the state's construction of its own law."   Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984) (explaining, in the context of an ineffective assistance of appellate counsel claim, that "[o]n the one hand, the issue of ineffective assistance—even when based on the failure of counsel to raise a state law claim—is one of constitutional dimension," but, "[o]n the other hand, the validity of the claim [counsel] failed to assert is clearly a question of state law, and we must defer to the state's construction of its own law.") (citations omitted)[12]; *see also* Callahan v. Campbell, 427 F.3d 897, 932 (11th Cir. 2005) (holding that defense counsel cannot be deemed ineffective for failing to make a state-law-based objection when the state court has already concluded that the objection would have been overruled under state law; to conclude otherwise would require the federal habeas court to make a determination that the state court misinterpreted state law, which would violate the fundamental principle that federal habeas courts should not second-guess state courts on matters of state law); Herring v. Sec'y Dep't of Corr., 397 F.3d 1338, 1354–55 (11th Cir. 2005) (denying federal habeas relief on ineffective assistance claim based on counsel's failure to make state law-based objection; holding that the Florida Supreme Court's conclusion that the proposed objection would have been overruled was binding and precluded federal habeas relief on the

---

[12] Alvord was superseded by statute on other grounds as noted in Hargrove v. Solomon, 227 F. App'x 806 (11th Cir. 2007).

ineffective assistance claim: "The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done . . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'") (alterations in original) (quoting Agan v. Vaughn, 119 F.3d 1538, 1549 (11th Cir. 1997)).

Here, as in Alvord, Callahan, and Herring, the state court has already answered the question of whether Petitioner's VOP sentence exceeded the statutory maximum—it did not. This court must defer to the state court's determination of state law. The failure by Petitioner's counsel to raise this issue either at sentencing or on appeal of the VOP judgment thus cannot be deemed deficient performance, and Petitioner cannot show she was prejudiced by counsel's failure to raise this issue, as it had no arguable basis for success. Accordingly, Petitioner is not entitled to relief on this claim.

B.   Ground Two:   "Defendant was denied constitutional right according to 6th Amendment guarantee of effective assistance of counsel where counsel failed to object to prosecutor's Giglio violation and improper comments, a 20 year enhancement from score sheet guideline based on conduct that had not yet resulted in criminal conviction, a vindictive sentence and did not preserve these issues for appeal."

Petitioner alleges her VOP counsel was ineffective for failing to object to the prosecutor's repeated references to evidence of Petitioner's criminal behavior, which was allegedly unrelated to the VOP charges, including references to prior convictions, allegations not yet proven, and an indictment for first degree murder for a homicide that occurred fifteen years prior (doc. 1 at 8–10, 26–28). Petitioner additionally contends counsel should have objected to the prosecutor's false statement that Petitioner had been charged with attempted escape in Santa Rosa County, because Petitioner had only been charged with introduction of contraband (id.). Petitioner also faults counsel for failing to object to the prosecutor's false and inflammatory statement, "This young lady who her record reflects that at anytime she's out of prison, she's committing criminal offenses, including killing and violent crimes against law enforcement" (id.). Petitioner contends the "composite effect" of the prosecutor's comments caused the state court to impose an unreasonable and vindictive sentence well above the lowest permissible prison sentence of 48.7 months, pursuant to the Florida sentencing guidelines (id.). Petitioner asserts she presented this claim to the state courts in her Rule 3.850 motion (id. at 11).

Respondent asserts this claim is an amalgamation of various arguments presented by Petitioner in her amended Rule 3.850 motion (doc. 21 at 35–36).  Respondent asserts that it "appears" Petitioner satisfied the exhaustion requirement, but Respondent expressly states she does not concede or waive the exhaustion defense (*id.* at 39).  Respondent contends the state courts adjudicated the claims on the merits, and the adjudication was not contrary to or an unreasonable application of clearly established federal law (*id.* at 39–45).

       1.      Clearly Established Federal Law

The two-pronged <u>Strickland</u> standard, set forth *supra*, governs this claim.  Trial "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  <u>Strickland</u>, 466 U.S. at 690.  "To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances."  <u>Cullen v. Pinholster</u>, — U.S. —, 131 S. Ct. 1388, 1403, 179 L. Ed. 2d 557 (2011) (quotation marks and alterations omitted).  "[T]he absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." <u>Burt v. Titlow</u>, — U.S. —, 134 S. Ct. 10, 17, 187 L. Ed. 2d 348 (2013) (quotation marks and alterations omitted).

With regard to prejudice, the <u>Strickland</u> court emphasized that a defendant must show a "reasonable probability" of a different result.  A reasonable probability is one that sufficiently undermines confidence in the outcome.  466 U.S. at 694.  "The likelihood of a different result must be substantial, not just conceivable."  <u>Richter</u>, 131 S. Ct. at 792.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  <u>Strickland</u>, 466 U.S. at 698; <u>Collier v. Turpin</u>, 177 F.3d 1184, 1197 (11th Cir. 1999).  "Surmounting's high bar is never an easy task."  <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010).  "Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult."  <u>Richter</u>, 131 S.Ct. at 788.  As the <u>Richter</u> Court explained:

> The standards created by <u>Strickland</u> and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so.  The <u>Strickland</u> standard is a

general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.

*Id.* (citations omitted).

2.  Federal Review of State Court Decision

Petitioner presented this ineffective assistance of counsel claim in Grounds 2, 5, and 6 of her amended Rule 3.850 motion (Ex. GG3 at 57–62, 66–73).  The state circuit court cited the <u>Strickland</u> standard as applicable to Petitioner's claims (Ex. GG4 at 103–04).  The court adjudicated the claims as follows:

**GROUND 2**

Defendant claims counsel was ineffective for failing to object to improper prosecutorial comments, misstatements, or admission of bad acts evidence. Referencing pages 7, 8, 10, and 27 of the sentencing transcript, she asserts counsel should have objected to comments the prosecutor made at sentencing in reference to prior convictions, allegations not yet proven, and a first degree murder indictment for a crime that occurred 15 years ago.

Defendant was charged with violating her probation and pled to counts one through five of the violation report, which included charges of escape, battery of a law enforcement officer, resisting officer with violence, and soliciting aid to escape and sending contraband.  (Exhibit B.)  According to the report, these offenses occurred in Leon County in 2008 when officers were attempting to serve an arrest warrant on Defendant for a murder charge and in Santa Rosa County in 2010 when she was incarcerated there.

At sentencing, the prosecutor referenced Defendant's prior record from a prior scoresheet, as well as murder charges in Leon County and Santa Rosa County and the charges referenced in the VOP report.  (Exhibit C, pp. 8–17.)  The prosecutor stated Defendant entered a plea to manslaughter as to the Santa Rosa County charge and was sentenced to 15 years prison, and Defendant received five years for charges arising out of Leon County.  (Exhibit C, pp. 10–11.)  Defense counsel objected to discussion [sic] of charges admitted and to crimes not charged and not part of the hearing, but her objection was overruled.  (Exhibit C, pp. 17–19.)  The State requested Defendant to be sentenced to 40 years in prison.  (Exhibit C, p. 19.) Although she faced a possible sentence of 60 years, Defendant was sentenced to

consecutive terms of 15 and 10 years for a total of 25 years prison with credit for
time served.  (Exhibit C, pp. 35–37.)

The sentencing court may "consider any and all information that reasonably
might bear on the proper sentence for a particular defendant, given the crime
committed."  *Mora v. State*, 964 So. 2d 881, 884 (Fla. 3d DCA 2007) (internal
citations and quotations omitted).  The comments made by the prosecutor related to
acts described in the VOP report or to other convictions.  *See Whitehead v. State*, 21
So. 3d 157, 160 (Fla. 4th DCA 2009) (pending charge could be considered where it
was relevant to the sentence).  *Compare with Reese v. State*, 639 So. 2d 1067, 1068
(Fla. 4th DCA 1994) (the court may not consider unsubstantiated allegations of
misconduct).  Defendant fails to allege facts showing the court considered any
impermissible factors or that any impermissible factors obviously affected the
sentence.  *See* 964 So. 2d at 884.
. . . .

Finally, Defendant claims had counsel objected and preserved the matter for
appellate review, Defendant would have prevailed on appeal.  This claim fails to
allege ineffectiveness at trial and is insufficient.  *See Carratelli v. State*, 961 So. 2d
312, 323 (Fla. 2007).
. . . .

**GROUND 5**

Defendant Claims counsel was ineffective for failing to object to an upward
departure from her scoresheet guideline sentence based on evidence of contraband
charges for which she had not yet been convicted.  Defendant did not receive an
upward departure sentence.  Moreover, a violation of probation on a new law
violation does not depend on proof of arrest but rather on evidence of having
committed the offense.  *See Robinson v. State*, 907 So. 2d 1284, 1287 (Fla. 2d DCA
2005).  Defendant's claim is without merit.

**GROUND 6**

Defendant claims counsel was ineffective for failing to object and preserve
for appellate review a vindictive sentence.  Defendant asserts her 25 year consecutive
sentence is vindictive where she scored 93 points on her scoresheet for a sentence of
48.7 months, and her sentence was enhanced due to prosecutorial misconduct and
admission of bad acts.  Upon revocation of probation, the court may impose any
sentence it might have originally imposed.  *Pagnotti v. State*, 821 So. 2d 466, 468
(Fla. 4th DCA 2002); Fla. Stat. § 94S.06(2)(b).  Defendant fails to allege facts
showing the sentencing court acted with vindictive intent or was overly involved in
the plea process or other facts establishing a vindictive sentence.[FN 2]  *See Baxter
v. State*, 127 So. 3d 726,733–735 (Fla. 1st DCA 2013).  Her claim counsel failed to

preserve the matter for appellate review fails to state a claim upon which relief may be granted.  *See Carratelli v. State*, 961 So. 2d 312, 323 (Fla. 2007).

> [FN 2:  A presumption of [vindictiveness] also lacks support here, in that the judge who imposed the 2004 sentence is not the same who imposed the 2010 sentence.  (Exhibit A)  *See Allende v State*, 942 So. 2d 950, 951 (Fla. 5th DCA 2006).]

(Ex. GG4 at 103–04, 105–08).  Petitioner raised these issues in her initial brief on appeal to the First DCA (Ex. GG6 at 17–21, 26–34).  The appellate court affirmed the lower court's decision without written opinion (Ex. GG8).

The state court's factual findings as to the substance of the prosecutor's comments during the VOP sentencing are supported by the transcript of that proceeding, which is part of the state post-conviction record (*see* Ex. GG4 at 152–63).  Therefore, the state court's findings are entitled to deference.  Additionally, as previously discussed, this court must defer to the state court's determinations of state law issues.  *See* Bradshaw, 546 U.S. at 76; Mullaney, 421 U.S. at 691. Therefore, this court defers to the state court's determination that the prosecutor's references to Petitioner's prior criminal convictions and charges referenced in the VOP report, were not improper, because Florida law permitted the sentencing court to consider that information in determining the appropriate sentence.

Regarding Petitioner's allegation that counsel failed to object to the prosecutor's statement, "This young lady who her record reflects that at anytime she's out of prison, she's committing criminal offenses, including killing and violent crimes against law enforcement," Petitioner failed to demonstrate she was prejudiced by counsel's failure to object to this particular statement.  Just prior to this statement, the following occurred:

> MR. ELMORE [the prosecutor]: . . . And so, what we have before you today for sentencing, Judge, is a lady who has well over thirty felony offenses on her criminal record, who is a killer, who is a violent criminal, who resisted with violence the officers who arrested her for a homicide that occurred years before—

> MS. GRAF [defense counsel]:  Objection, Judge.  I don't know why we're going into crimes that aren't charged, that aren't a part of this hearing.

> THE COURT:  Well, overruled.

(Ex. GG4 at 161–62).  The sentencing court's having just overruled defense counsel's objection to similar statements by the prosecutor, there is no reasonable probability the court would have sustained an objection had counsel renewed it.

Counsel was also not ineffective in regard to her failure to object to the prosecutor's allegedly false statements (i.e., the prosecutor's referring to a first degree murder indictment even though Petitioner was convicted of only manslaughter, his referring to charges in Santa Rosa County relating to Petitioner's attempted escape, and his referring to her killing people and committing violent crimes anytime she is out of prison).  As the state court found, Petitioner pleaded no contest to the first five allegations of the probation violation report, which alleged that she (1) committed the offense of escape in Leon County, (2) committed the offense of battery on a law enforcement officer in Leon County, (3) committed the offense of resisting an officer with violence in Leon County, (4) attempted to send letters from the Santa Rosa County Jail soliciting aid to escape, and (5) mailed letters from the Santa Rosa County Jail soliciting aid to escape (*see* Ex. GG4 at 143–45).  Additionally, the fact that Petitioner pleaded no contest to and was convicted of only manslaughter in Santa Rosa County (*see* Ex. JJ), does not render false the prosecutor's statement that she was originally charged with first degree murder in that case.

Petitioner failed to demonstrate that the state court's adjudication of the claims asserted in Ground Two was based upon an unreasonable determination of the facts, or that it was contrary to or an unreasonable application of <u>Strickland</u>.  Therefore, she is not entitled to federal habeas relief.

    C.    <u>Ground Three:  "Defendant was denied U.S.C.A. Constitutional Amendment 6 right to effective assistance of counsel where counsel suffered from substance abuse, represented the Defendant in court under the influence, failed to preserve for appellate review denial of counsel's Motion to Withdraw without a hearing, and failed to file a Notice of Appeal for Defendant."</u>

Petitioner asserts defense counsel Susan Graf retired less than three months after representing Petitioner due to counsel's "addiction issues" (doc. 1 at 11–12).  Petitioner alleges that on September 2, 2010, prior to the VOP hearing, counsel filed a motion to withdraw, but the court denied the motion without a hearing to determine whether a conflict of interest would impair Petitioner's rights (*id.*).  Petitioner alleges counsel failed to preserve this issue for appellate review by failing to object to the court's failure to hold a hearing (*id.* at 12).  Petitioner alleges if counsel had preserved the

issue for appeal, she would have prevailed "because counsel should be free from any influence that would substantially impair her ability to render independent legal advice" (*id.*). Petitioner alleges that when counsel appeared at the VOP hearing on October 22, 2010, she was extremely pale, shaking, sweating, and "seemed about to pass out" (*id.*). Petitioner additionally alleges counsel failed to file a notice of appeal of the VOP judgment and sentence, despite Petitioner's repeated requests that she do so (*id.*). Petitioner alleges she would have received a less harsh sentence if counsel had objected to the failure to hold a hearing on the motion to withdraw, thus preserving the issue for appeal, and if counsel had filed a notice of appeal (*id.*). Petitioner asserts she raised these issues in her Rule 3.850 motion (*id.* at 13).

Respondent argues that Petitioner did not exhaust the claim regarding defense counsel's ineffectiveness due to her alleged drug addiction, because although Petitioner raised it in Ground 2 of her amended Rule 3.850, she failed to argue it in her initial brief on appeal of the circuit court's denial of the motion (doc. 21 at 46–52). Respondent alternatively contends the state court's adjudication of the claim was not contrary to or an unreasonable application of clearly established federal law (*id.* at 52–55). With regard to Petitioner's claim that defense counsel failed to object to the court's denial of her motion to withdraw without holding a hearing, and counsel's failure to file a notice of appeal, Respondent asserts that it "appears" Petitioner satisfied the exhaustion requirement, but Respondent expressly states she does not concede or waive the exhaustion defense (*id.* at 56–57). Respondent contends the state courts adjudicated the claims on the merits, and the adjudication was not contrary to or an unreasonable application of clearly established federal law (*id.* at 57–59).

1.      Clearly Established Federal Law

The Strickland standard, set forth *supra*, governs this claim.

2.      Federal Review of State Court Decision

Petitioner presented these ineffective assistance of counsel claims in Grounds 2 and 3 of her amended Rule 3.850 motion (Ex. GG3 at 62–63). The state circuit court adjudicated the claims as follows:

**GROUND 2**

. . . .

> Defendant alleges counsel had a drug addiction which led to a conflict of interest and affected her performance.  Defendant fails to allege facts showing a connection between drug use and ineffectiveness of counsel.  *See Bryan v. State*, 753 So. 2d 1244,1249–1250 (Fla. 2000).
>
> . . . .
>
> **GROUND 3**
>
> Defendant claims counsel was ineffective for failing to preserve for appellate review denial of counsel's motion to withdraw and asserts she would have prevailed on appeal.  This claim is insufficient.  *Id.* [*See Carratelli v. State*, 961 So. 2d 312, 323 (Fla. 2007) (claim that but for counsel's failure to preserve issue for appellate review, defendant would have prevailed on appeal is insufficient to show that counsel was ineffective at trial).]

(Ex. GG4 at 107).

In Petitioner's initial brief on appeal of the decision to the First DCA,  Petitioner stated Ground Three as follows:

> Ineffective Assistance of counsel for failure to preserve for appellate review denial of counsel's motion to withdraw without a hearing where counsel suffered from drug addition, represented the defendant in court under the influence and rendered substandard assistance

(Ex. GG6 at 1).  In Petitioner's Summary of the Argument, she argued:

> Defendants [sic] sentencing hearing was fundamentally unfair and constitutionally deficient due to ineffective assistance of counsel where counsel petitioned to withdraw from case due to drug addiction, but was denied without a hearing, she attended the hearing under the influence, failed to object to improper prosecutorial misstatements and introduction of bad acts evidence or introduce mitigating evidence, failed to prepare an appeal or preserve for appellate review any relevant issues, then retired two months later due to said addiction issue.

(*id.* at 10–11).  In her argument of Ground Three, Petitioner asserted that defense counsel's representation was deficient due to her drug addiction and being "impaired" and "under the influence" at the VOP hearing (*id.* at 21–24).  The undersigned concludes this was sufficient to exhaust Petitioner's claim of counsel's ineffectiveness due to alleged drug addiction.  Therefore, the claim is reviewable by this federal court.

Petitioner failed to present the state court with any facts or evidence to support either her allegation that counsel was under the influence of drugs during her representation of Petitioner, or her allegation that the conflict of interest underlying counsel's motion to withdraw was counsel's

drug addiction.  Although Petitioner alleged that counsel filed a motion to withdraw, was pale, shaking, sweating, and "seemed to be on the verge of passing out," and retired two months after the VOP hearing, Petitioner's assertion that this evidenced counsel's addiction to drugs is purely speculative.

Further, Petitioner failed to show that any drug use or dependency impaired counsel's actual conduct at the VOP hearing.  *See* Kelly v. United States, 820 F.2d 1173, 1176 (11th Cir. 1987) (the fact of defense counsel's drug addiction was insufficient to meet the Strickland standard of ineffectiveness where there was no specific evidence that counsel's drug use or dependency impaired counsel's actual conduct at trial).  As discussed *supra* in Ground Two, Petitioner failed to show that counsel was deficient for failing to object to alleged improper comments and misstatements by the prosecutor.  Further, the transcript of the VOP hearing demonstrates that defense counsel spoke logically and rationally in making objections, examining witnesses, and arguing that 48.7 months, the lowest permissible sentence under the sentencing guidelines, was the most appropriate sentence (*see* Ex. Q).

Additionally, Petitioner failed to show deficient performance with regard to defense counsel's failure to object to the court's denying her motion to withdraw without a hearing.  The state court docket reflects that at Petitioner's first appearance on the VOP on August 18, 2010, the court appointed the public defender's office to represent Petitioner (*see* Ex. A1, docket entry 08/18/2010).  On August 23, 2010, the public defender's office filed a motion to withdraw (*id.*, docket entry 08/23/2010).  On August 24, 2010, the court granted the motion to withdraw and appointed regional conflict counsel ("RCC") (*id.*, docket entry 08/23/2010).  On August 25, 2010, RCC Susan Graf was notified that she was appointed to represent Petitioner (*id.*, docket entry 08/25/2010).  On September 2, 2010, RCC Graf filed a motion to withdraw, and on September 14, 2010, the court denied the motion (*id.*, docket entries 09/02/2010, 09/14/2010; *see also* Ex. X at 7).

Under Florida law, the trial court may, but is not required to, hold a hearing upon regional conflict counsel's filing a motion to withdraw based upon a conflict of interest.  *See* Fla. Stat. § 27.5303(1)(b) ("The court shall review and may inquire or conduct a hearing into the adequacy of the regional counsel's representations regarding a conflict of interest without requiring the

disclosure of any confidential communications.  The court shall deny the motion to withdraw if the court finds the grounds for withdrawal are insufficient or the asserted conflict is not prejudicial to the client.").  Petitioner failed to show that RCC Graf had a meritorious basis for objecting to the court's failure to hold a hearing on her motion to withdraw.  Therefore, Petitioner failed to show deficient performance with respect to counsel's failure to object.  *See* Brownlee v. Haley, 306 F.3d 1043, 1046 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit); Chandler v. Moore, 240 F.3d 907, 917–18 (11th Cir. 2001) (rejecting argument for ineffective assistance of counsel where counsel failed to raise a non-meritorious claim); Meeks v. Moore, 216 F.3d 951, 961 (11th Cir. 2000) (counsel not ineffective for failing to make meritless motion for change of venue); Jackson v. Herring, 42 F.3d 1350, 1359 (11th Cir. 1995) (counsel need not pursue constitutional claims which he reasonably believes to be of questionable merit).

Additionally, Petitioner failed to show that she was prejudiced, in the VOP proceeding, by counsel's failure to object to the court's failure to hold a hearing on the motion to withdraw. Petitioner alleges she was prejudiced by this alleged error, because she received a more harsh sentence, and the issue unpreserved for appellate review.  When the claimed error of counsel occurred at the guilt stage and is related to the outcome of that proceeding (not the outcome of an appeal), and the claimed error is counsel's failure to raise a particular issue in the trial court at all, which is the claim here (as opposed to counsel's bringing the error to the trial court's attention but failing to follow the proper procedure for preserving it for appeal), the court must gauge prejudice against the outcome of the trial, that is, whether there is a reasonable probability of a different result at trial, not on appeal.  *See* Purvis v. Crosby, 451 F.3d 734, 739 (11th Cir. 2006) (citing Strickland, 466 U.S. at 694–95).[13]  Here, Petitioner failed to show a reasonable probability that the result of the

---

[13] Such a claim is distinguishable from a claim that although counsel raised an issue of trial court error in the trial court, counsel failed to properly preserve the error for appellate review.  In such instances, a federal habeas petitioner may demonstrate prejudice by showing there is a reasonable probability of a more favorable outcome on appeal had the claim been properly preserved.  For example, in Davis v. Sec. for Dep't of Corr., the federal habeas petitioner claimed that although his trial counsel raised a Batson challenge in the trial court (by objecting to the State's possibly discriminatory juror strikes), counsel failed to follow state law procedure for preserving the Batson claim for appeal by either expressly renewing the objection at the conclusion of voir dire or accepting the jury pursuant to a reservation of the Batson challenge.  341 F.3d 1301, 1315–16 (11th Cir. 2003).  The Eleventh Circuit held that when a defendant "raises the unusual claim that trial counsel, while efficacious in raising an issue, nonetheless failed to preserve it for appeal, the appropriate prejudice inquiry asks whether there is a reasonable likelihood of a more favorable outcome on appeal had the claim been preserved."  341 F.3d at 1316.

VOP proceeding would have been different if counsel had objected to the trial court's failure to hold a hearing on counsel's motion to withdraw.  Further, pursuant to <u>Purvis</u>, any effect on her appeal is irrelevant to the prejudice analysis.  Therefore, Petitioner failed to show she was prejudiced by counsel's failure to object to the court's failure to hold a hearing on the motion to withdraw.

Finally, to the extent Petitioner alleges defense counsel's failure to file a notice of appeal is evidence of counsel's drug use or addiction, her allegation is, again, purely speculative.  Further, counsel's failure to file a notice of appeal is insufficient to demonstrate prejudice in the VOP proceeding, and is relevant only to prejudice in the appeal proceeding.  *See* <u>Davis</u>, 341 F.3d at 1316 (when defense counsel defaults an appeal entirely by failing to file timely notice, the only possible impact is on the appeal).  The record demonstrates that the state court already granted Petitioner all the relief she is due on her claim of ineffective assistance for failing to file a notice of appeal. Petitioner filed a state habeas petition seeking a belated appeal (Ex. U1), and the First DCA granted it, permitting Petitioner to appeal the VOP judgment (Ex. U2).[14]  Thus Petitioner received all the relief she is due on this claim.

Petitioner failed to demonstrate that the state court's adjudication of the claims asserted in Ground Three was contrary to or an unreasonable application of <u>Strickland</u>.  Therefore, she is not entitled to relief on this claim.

D.    <u>Ground Four:  "Defendant was denied sixth amendment right to effective assistance of counsel when counsel failed to advise Defendant she could not be convicted of burglary where defendant owned the premises and was invitee of home rendering her plea unknowing and involuntary."</u>

Petitioner alleges at the time of her plea to the original burglary charge, on November 19, 2004, she informed trial counsel that at the time of the alleged burglary, she owned the house and had been invited into the house by the tenant (doc. 1 at 14–15).  Petitioner asserts trial counsel failed to inform her that she had a viable defense to the burglary charge, thus rendering her plea to the original burglary charge unknowing and involuntary (*id.*).  Petitioner alleges during the VOP

_____

[14] The fact that the First DCA granted the belated appeal does not lend any credibility to Petitioner's allegation that defense counsel was impaired by or under the influence of drugs at the VOP hearing.  In Petitioner's state habeas petition she made no allegation of drug use by counsel (*see* Ex. U1).  The only allegations in her state habeas petition were that she and her mother asked counsel to pursue an appeal, but counsel failed to do so (*see id.*).  Additionally, Petitioner did not allege drug use or addiction in her initial brief on appeal of the VOP judgment (*see* Ex. X).

proceeding, she informed her VOP counsel of the defense to the original burglary charge, but counsel failed to advise her that she could withdraw her plea to the original burglary charge during the VOP proceeding, and counsel failed to advise her that she could present the burglary defense as evidence to mitigate her VOP sentence (*id.*). Petitioner contends counsel's failure to advise her of these options rendered her plea involuntary and resulted in a harsher sentence (*id.*). Petitioner asserts she raised this claim in her Rule 3.850 motion (*id.* at 15–16).

As with some of Petitioner's prior claims, Respondent asserts that it "appears" Petitioner satisfied the exhaustion requirement by presenting this claim in her amended Rule 3.850 motion, but Respondent expressly states she does not concede or waive the exhaustion defense (doc. 21 at 59–61). Respondent contends the state courts adjudicated the claims on the merits, and the adjudication was not contrary to or an unreasonable application of clearly established federal law (*id.* at 61–64).

        1.      Clearly Established Federal Law

The <u>Strickland</u> standard, set forth *supra*, governs this claim.

        2.      Federal Review of State Court Decision

Petitioner raised this claim as Ground 7 in her amended Rule 3.850 motion (Ex. GG3 at 73–74). The state circuit court adjudicated the claim as follows:

> **GROUND 7**
>
> Defendant asserts her plea of November 19, 2004, was involuntary where she had a complete defense to the burglary charge to the effect she was invited into the premises by the tenant at the time of burglary. Defendant claims counsel was ineffective for failing to inform her she could present this evidence and withdraw her plea at the October 22, 2010 hearing.
>
> Defendant alleges she told counsel at the time of the 2004 plea of the defense, but she does not allege she informed VOP counsel of the burglary defense in 2010. Regardless, Defendant's challenge to her 2004 plea would have been untimely in 2010. This claim is without merit.

(Ex. GG4 at 108–09). Petitioner argued this issue in her initial brief on appeal (GG6 at 34–36). The First DCA affirmed the lower court's decision without written opinion (Ex. GG8).

The state court's determination as to the untimeliness of a 2010 challenge to Petitioner's 2004 plea to the original burglary charge is a matter of purely state law. Therefore, this federal court must defer to the state court's determination that a challenge to Petitioner's 2004 plea to the original burglary charge would have been untimely if she attempted to raise it in the VOP proceeding. VOP counsel's failure to advise Petitioner that she could challenge her 2004 plea in the 2010 VOP proceeding was thus not deficient. Similarly, even if VOP counsel had advised Petitioner that she could attempt to withdraw her original plea, any motion to withdraw her plea nearly six years after the fact would have been denied as untimely; therefore, Petitioner cannot demonstrate prejudice under Strickland. Moreover, Petitioner failed to show a reasonable probability that the VOP court would have imposed a less harsh sentence if defense counsel had presented evidence of a defense to the original burglary charge in mitigation of the VOP sentence. Petitioner told the sentencing court that she owned the home which was burglarized, thus the court was aware of this information prior to imposing sentence (*see* Ex. Q at 69).

Petitioner failed to demonstrate that the state court's adjudication of her claim was contrary to or an unreasonable application of Strickland. Therefore, she is not entitled to relief on Ground Four.

E.    Ground Five:  "Sentence violates the constitution or laws of the U.S. due to error where improper and unreasonable enhancement of sentence over the recommended score sheet guideline in excess of twenty one years was a result of court considering constitutionally impermissible factors causing manifest injustice."

Petitioner asserts the VOP court improperly considered information and argument offered by the prosecutor in determining her sentence; specifically, Petitioner details the same information discussed *supra* in Ground Two (doc. 1 at 16–18). Petitioner alleges the prosecutor violated Giglio v. United States, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972), by incorrectly characterizing some of Petitioner's prior conduct (*id.* at 17–18). Petitioner contends that because the court's reasons for imposing a sentence above the lowest permissible prison sentence were not based upon objective information concerning identifiable conduct on Petitioner's part, the sentence was presumptively vindictive (*id.* at 17). Petitioner asserts she raised this claim in her Rule 3.850 motion (*id.* at 19–20)

Again, Respondent asserts that it "appears" Petitioner satisfied the exhaustion requirement by presenting this claim in her amended Rule 3.850 motion, but Respondent expressly states she does not concede or waive the exhaustion defense (doc. 21 at 65–67).  Respondent contends the state courts adjudicated the claims on the merits, and the adjudication was not contrary to or an unreasonable application of clearly established federal law (*id.* at 67–73).

Petitioner raised these claims in Ground 9 of her amended Rule 3.850 motion (Ex. GG3 at 75–80).  The state circuit court adjudicated the claim(s) as follows:

**GROUND 9**

Defendant claims her sentence is illegal due to an upward departure based on the sentencing court's consideration of impermissible sentencing factors.  As stated elsewhere herein, Defendant did not receive an upward departure sentence.  The evidence presented by the State relates to the VOP charges to which Defendant admitted, and Defendant fails to allege facts sufficient to establish presentation of impermissible sentencing factors.  The sentencing court stated it was significant that Defendant committed new law violations while on probation.  (Exhibit C, p. 35.)  Defendant's allegations fail to support her conclusory allegations that sentencing was based on impermissible factors or was vindictive.  Her claim is insufficient and otherwise without merit.  Defendant also accuses the State of committing a *Giglio* violation but fails to properly allege such a claim.  *See Franqui v. Slate*, 59 So. 3d 82, 102 (Fla. 2011).

(Ex. GG4 at 109).  Petitioner argued this issue in her initial brief on appeal to the First DCA (Ex. GG6 at 38–44).  The appellate court affirmed the lower court's decision without written opinion (Ex. GG8).

Initially, as Respondent points out, Petitioner's characterization of her sentencing guideline score of 48.7 months as being the "recommended sentence" and any sentence above it as being an "enhancement," is a mischaracterization.  Petitioner's offense conduct in Case Nos. 2002-CF-404 and 2004-CF-707 occured in December and July and August of 2001, respectively (*see* Exs. A3, B3).  She was thus sentenced under Florida's Criminal Punishment Code (CPC).  *See* Fla. Stat. § 921.002 (2001); Fla. R. Crim. P. 3.704.  Under the CPC, what Petitioner erroneously characterizes as the "recommended sentence" is actually the "lowest permissible sentence" (*see* Ex. S, Criminal Punishment Code Scoresheet).  *See* Fla. Stat. § 921.0024(2).  "The lowest permissible sentence is the minimum sentence that may be imposed by the trial court, absent a valid reason for departure."

Fla. Stat. § 921.0024(2); *see* Jackson v. State, 64 So.3d 90, 92 (Fla. 2011).  "A departure sentence is one that 'decreases an offender's sentence below the lowest permissible sentence' provided by calculations from the total sentence points."  Jackson, *supra* (quoting Fla. Stat. § 921.00265(2)). Under the CPC, "[t]he permissible range for sentencing must be the lowest permissible sentence up to and including the statutory maximum, as defined in section 775.082, for the primary offense and any additional offenses before the court for sentencing."  Fla. R. Crim. P. 3.704(25); *see also* Fla. Stat. § 921.0024(2).  Petitioner correctly concedes that her sentences did not exceed the statutory maximum (*see* doc. 1 at 16).  *See* Fla. Stat. §§ 810.02(3)(b), 655.0322(5), 775.082(3)(c), 948.06(1)(d).  Moreover, as the state court found, she did not receive an upward departure sentence.

Petitioner contends the sentencing court considered "constitutionally impermissible factors" in imposing sentence, specifically, statements by the prosecutor which allegedly violated Giglio v. United States, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972).

"Giglio error, a species of Brady [v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963)] error, occurs when the undisclosed evidence demonstrates that the prosecution's case included perjured testimony and that the prosecution knew, or should have known, of the perjury." Ford v. Hall, 546 F.3d 1326, 1331 (11th Cir. 2008) (emphasis added).  Here, Petitioner failed to show Giglio error with respect to the prosecutor's statements at sentencing.  There was no Giglio violation because there was no undisclosed evidence.  *See* Hammond v. Hall, 586 F.3d 1289, 1308–09 (11th Cir. 2009) (holding that Giglio claim failed because the evidence was known by the defense); *see also, e.g.*, Shuler v. Sec'y, Fla. Dep't of Corr., — F. App'x —, 2015 WL 2080086, at *2 (11th Cir. May 6, 2015) (unpublished) (no Giglio violation, in light of prisoner's knowledge of misleading nature of testimony that State elicited from codefendant.).  Therefore, the state court's adjudication of Petitioner's Giglio claim was not contrary to or an unreasonable application of clearly established federal law.

Petitioner additionally claims that the court engaged in vindictive sentencing.  The probation violation sentence (fifteen years in prison for the burglary conviction in Case No. 2002-CF-404, and three concurrent terms of ten years in prison for the fraud charges in Case No. 2004-CF-707) was not vindictive simply because it exceeded Petitioner's original sentence, especially in light of the fact that the statutory maximum sentence for each of those four second degree felonies was fifteen

years in prison, *see* Fla. Stat. § 775.082(3)(d), and the court imposed a sentence less than that. Moreover, the judge's comments upon imposing sentence at the revocation hearing show that the judge relied upon Petitioner's conduct that occurred after the original sentencing, specifically, her commission of new law violations while she was on probation for burglary and fraud (*see* Ex. Q at 76). Put simply, this evidence justified a more severe sentence than her original sentence. Therefore, Petitioner failed to show that she was the victim of vindictive sentencing.

To the extent Petitioner claims that the state sentencing court considered information that was not properly considered under Florida law, she is not entitled to relief. The Supreme Court has reaffirmed the "fundamental sentencing principle" that "'a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come.'" United States v. Grayson, 438 U.S. 41, 50, 98 S. Ct. 2610, 57 L. Ed. 2d 582 (1978) (quoting United States v. Tucker, 404 U.S. 443, 446, 92 S. Ct. 589, 30 L. Ed. 2d 592 (1972); *see also* Pennsylvania v. Ashe, 302 U.S. 51, 55, 58 S. Ct. 59, 82 L. Ed. 43 (1937). The Court has however, sustained due process objections to sentences imposed on the basis of "misinformation of constitutional magnitude." Tucker, 404 U.S. at 447; *see* Townsend v. Burke, 334 U.S. 736, 740–741, 68 S. Ct. 1252, 92 L. Ed. 1690 (1948).

In adjudicating Ground Two of Petitioner's amended Rule 3.850 motion (in which Petitioner alleged that defense counsel was ineffective for failing to object to information offered by the prosecutor in his sentencing argument), the state court determined:

> The sentencing court may "consider any and all information that reasonably might bear on the proper sentence for a particular defendant, given the crime committed." *Mora v. State*, 964 So. 2d 881, 884 (Fla. 3d DCA 2007) (internal citations and quotations omitted). The comments made by the prosecutor related to acts described in the VOP report or to other convictions. *See Whitehead v. State*, 21 So. 3d 157, 160 (Fla. 4th DCA 2009) (pending charge could be considered where it was relevant to the sentence). *Compare with Reese v. State*, 639 So. 2d 1067, 1068 (Fla. 4th DCA 1994) (the court may not consider unsubstantiated allegations of misconduct). Defendant fails to allege facts showing the court considered any impermissible factors or that any impermissible factors obviously affected the sentence. *See* 964 So. 2d at 884.

(Ex. GG4 at 106).

As previously discussed, this federal court must defer to the state court's determinations of state law issues.  *See* Bradshaw, 546 U.S. at 76; Mullaney, 421 U.S. at 691.  Therefore, the court defers to the state court's interpretation of Florida law with respect to information which the sentencing court could properly consider in imposing the VOP sentence.   Accepting that interpretation, Petitioner failed to show that the sentencing court considered impermissible information.

Petitioner alleges the sentencing court improperly considered the prosecutor's reference to a first degree murder charge, manslaughter, and homicide, and described Petitioner as a killer and a violent criminal.  The state court determined that under Florida law, the court could properly consider convictions which predated sentencing for the VOP violations.  The record demonstrates that on May 15, 2009, prior to imposition of the VOP sentence, Petitioner was convicted of escape, battery of a law enforcement officer, and resisting an officer with violence on in Leon County, Case No. 2008-CF-1677 (*see* Ex. Q at 53, Ex. R3).  Indeed Petitioner admitted to committing those crimes when she entered a no contest plea to those new law violations (*see* Ex. Q at 43–45; *see also* Ex. P). These crimes were violent in nature; therefore, the "violent criminal" reference was not improper.

The record further demonstrates that on August 17, 2010, also prior to imposition of the VOP sentence, Petitioner was convicted of manslaughter in Santa Rosa County, Case No. 2008-CF-854 (*see* Ex. Q at 53, Ex. JJ).  In Florida, manslaughter is defined as "[t]he killing of a human being by the act, procurement, or culpable negligence of another, without lawful justification . . . and in cases in which such killing shall not be excusable homicide or murder, . . . ."  *See* Fla. Stat. § 782.07(1). Therefore, the prosecutor's describing Petitioner as a "killer" was not improper.

Petitioner alleges the sentencing court improperly considered the prosecutor's reference to contraband charges and Petitioner's attempt to escape while she was detained in a facility in Santa Rosa County, even though she was not arrested for or convicted of charges relating to that conduct until after imposition of the VOP sentence.  The state court determined that under Florida law, the court could properly consider pending charges, where those charges are relevant to the sentence. Petitioner admitted to the following violations of the conditions of her probation:  (1) between June 28 and August 10 of 2010, she possessed or sent contraband from a county detention facility in Santa Rosa County in an attempt to escape or to solicit aid in escape, and (2) from June 26 through

June 30 of 2010, she possessed or sent contraband and/or attempted to escape from a detention facility in Santa Rosa County (*see* Ex. Q at 44–45; *see also* Ex. P).  The offense reports for those charges, filed in Santa Rosa County Case No. 2010-CF-6653 and Case No. 2010-CF-7332, were admitted into evidence at the VOP hearing (*see* Ex. Q at 52–53, Ex. R1, R2).  Thus, the prosecutor's statements regarding Petitioner's conduct were substantiated.

Petitioner failed to show that the VOP court imposed sentence on the basis of misinformation of constitutional magnitude.  She thus failed to demonstrate that the state court's adjudication of Ground Five was contrary to or an unreasonable application of clearly established federal law. Accordingly, she is not entitled to federal habeas relief.

## V.    CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.    That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

2.    That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this <u>24</u><sup>th</sup> day of August 2015.


<u>/s/ Elizabeth M. Timothy</u>
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**




## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**